UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EDGAR GONZALEZ DURAN,

                         Petitioner,

              -against-

PAUL ARTETA., *et al.*,

                      Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/03/2026

26-cv-3935 (LAK)

## MEMORANDUM OPINION AND ORDER
## GRANTING WRIT OF HABEAS CORPUS

LEWIS A. KAPLAN, *District Judge.*

       Edgar Gonzalez Duran, a 37-year-old native of Mexico who has lived on Staten Island since he was 8 years old, has been detained by immigration authorities for more than nine months. Despite his lengthy detention, the government never has been required to prove that Duran would pose a danger to the community or a risk of flight were he to be released. Duran now seeks a writ of habeas corpus on the ground (among others) that, in the circumstances, his prolonged incarceration violates his constitutional due process rights. The Court agrees.

### *Facts*

       Duran was brought into the United States by his mother in 1997 and has lived in Staten Island, New York, since that time.[1] Duran was arrested by U.S. Immigration and Customs Enforcement

---

[1]     Habeas Petition (Dkt 1) ¶¶ 13-14.

2

("ICE") on or about August 12, 2025, pursuant to an administrative warrant.[2]  The agency commenced removal proceedings against him the same day.[3]

Section 236(a) of the Immigration and Nationality Act ("INA") generally gives the Attorney General the discretion to release or detain immigrants in removal proceedings pending a final decision on removal.[4]  Under regulations implementing that provision, an ICE official makes an initial custody determination that may be appealed to an immigration judge, with the immigration judge's decision then being reviewable by the Board of Immigration Appeals ("BIA").[5]  The regulations provide that an ICE official may release an immigrant only if the immigrant "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."[6]  The BIA has required immigration judges to apply the same standard at bond redetermination hearings.[7]

At the time of Gonzalez Duran's arrest, however, ICE had interpreted a neighboring provision of the INA, Section 235(b)(2)(A),[8] to require the mandatory detention pending removal of any immigrant who, like Gonzalez Duran, had never been lawfully admitted or paroled into the United States.[9]

---

[2]    *Id.* ¶ 19; Dkt 11 at ¶ 22; Dkt 12-14 at 16.

[3]    Dkt 12-14 at 12-13.

[4]    8 U.S.C. § 1226(a).

[5]    8 C.F.R. § 236.1(c)(8), (d), (g).

[6]    *Id.* § 236.1(c)(8).

[7]    *See, e.g.*, *In re Guerra*, 24 I. & N. Dec. 37, 38 (B.I.A. 2006).

[8]    8 U.S.C. § 1225(b)(2)(A).

[9]    *See Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 491-92 (S.D.N.Y. 2025).

Despite recognizing that immigration judges long had afforded bond hearings to immigrants in those circumstances,[10] the BIA agreed with the agency's interpretation in September 2025.[11]  Because of ICE's mandatory-detention policy, the propriety of Gonzalez Duran's detention was not further reviewed until early January 2026.

On January 2, Gonzalez Duran requested a custody redetermination hearing before an immigration judge, and such a hearing was held on January 8, 2026.[12]  The immigration judge determined that he had the authority to conduct the hearing because a federal district court in California recently had certified a class that included Gonzalez Duran and issued a declaratory judgment that the agency's mandatory detention policy was unlawful.[13]  But the immigration judge determined that Gonzalez Duran had "not met his burden of proving that he is not a danger to the community of the United States" and denied release.[14]  Gonzalez Duran's appeal of that decision to the BIA remains pending, with no briefing schedule having been set as of April 21.[15]

---

[10] *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 n.6 (B.I.A. 2025).

[11] *Id.* at 229.

[12] Habeas Petition ¶¶ 31-32.

[13] Bond Order (Dkt 1-1) at 3-4.

[14] *Id.* at 6.

[15] Habeas Petition ¶ 37.

4

On January 12, 2026, an immigration judge ordered that Gonzalez Duran be removed from the United States.[16] Gonzalez Duran's appeal to the BIA remains pending, with no briefing schedule having been set as of May 12.[17]

On April 28, 2026, the Second Circuit held that immigrants like Gonzalez Duran are subject only to discretionary detention under Section 236(a) of the INA, not mandatory detention under Section 235(b)(2)(A).[18] Gonzalez Duran filed the instant petition for a writ of habeas corpus on May 12. That same week, consistent with the regulations applicable to detention under Section 236(a), an ICE official made an "initial custody determination" that Gonzalez Duran would be detained pending the outcome of his removal proceedings.[19] Gonzalez Duran acknowledged receipt of that decision on May 14 and checked a box requesting its review by an immigration judge.[20]

Gonzalez Duran remains incarcerated at the Orange County Correctional Facility in Goshen, New York.[21] The conditions at that facility, being a local jail, are "indistinguishable from those imposed on criminal defendants sent to prison following convictions for violent felonies and other serious crimes."[22]

---

[16] Habeas Petition ¶ 25; Dkt 12-15.

[17] Habeas Petition ¶ 26.

[18] *Barbosa da Cunha v. Freden*, 175 F.4th 61, 96 (2d Cir. 2026).

[19] Dkt 11 at ¶ 48; Dkt 12-17.

[20] Dkt 12-17 at 4.

[21] Habeas Petition ¶ 5.

[22] *Id.* ¶ 57 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)).

5

***Discussion***

Gonzalez Duran seeks a writ of habeas corpus on essentially two grounds. First, he requests immediate release on the theory that his detention today is made unlawful by the fact that the government initially subjected him to mandatory detention under Section 235(b)(2)(A). Second, he argues that the Due Process Clause of the U.S. Constitution requires that the government bear the burden of justifying his prolonged detention by clear and convicting evidence.

The Court rejects the first contention but agrees that, in the circumstances, Gonzalez Duran is entitled to a new bond hearing at which the government bears the burden to prove his release would pose a danger to the community or a flight risk.

I.    *Immediate Release*

The government asserts the authority to detain Gonzalez Duran under Section 236(a), and Gonzalez Duran has received, or is in the process of receiving, all the process to which he is entitled under that provision. Gonzalez Duran nonetheless argues that his continued detention is invalid because the government initially arrested him pursuant to its unlawful mandatory detention policy under Section 235(b)(2)(A).

Having already executed a warrant to arrest Gonzalez Duran last year,[23] ICE last month determined that Gonzalez Duran should be detained pending his removal proceedings pursuant to the regulations governing detention under Section 236(a). That determination was a "new administrative action," not a "*post hoc* rationalization" of prior conduct as Gonzalez Duran asserts,[24] and effectively began for Gonzalez Duran a new period of incarceration under Section 236(a). Unlike some immigrants

---

[23] *See* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General . . . .).

[24] *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 21 (2020) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)), *cited in* Pet'r's Reply (Dkt 13) at 8.

arrested under the government's unlawful mandatory detention policy,  Gonzalez Duran did not have any previous bond or parole improperly revoked[25] and already has received a bond hearing before an immigration judge.  Gonzalez Duran has received all the procedure to which he is statutorily due under Section 236(a) and is longer being detained under Section 235(b)(2)(A).[26]

As the Supreme Court has noted, "it is often 'appropriate' to allow the executive to cure defects in a detention."[27]  That is because habeas is a prospective remedy that "looks to the propriety of the petitioner's present confinement rather than to the legality of the confinement at some point in the past."[28]  The government appears finally to have abandoned its unlawful mandatory detention policy, at least with respect to Gonzalez Duran, in light of *Barbosa da Cunha*.  And unlike in past cases where the government opposed immediate release, ICE has taken concrete steps suggesting that it will afford Gonzalez Duran the statutory protections of Section 236(a) moving forward.[29]  In disposing of the petition "as law and justice require" in the unique circumstances of this case,[30] the Court declines to require the

---

[25]

*Cf. Barco Mercado*, 811 F. Supp. 3d at 491-92, 502.

[26]

The petition alleges that the BIA likely will summarily dismiss his appeal pursuant to *Matter of Yajure Hurtado*.  Habeas Petition ¶ 37. But in light of the Second Circuit's decision in *Barbosa da Cunha*, and the fact that Gonzalez Duran was granted a bond hearing during a period when he was the beneficiary of class-wide declaratory relief, the Court declines to speculate as to what the BIA will do in the circumstances.  If the agency, including the BIA or any immigration judge from which Gonzalez Duran seeks a bond redetermination hearing, denies relief solely on the reasoning of *Matter of Yajure Hurtado*, he can file a new petition for a writ of habeas corpus should he remain incarcerated at that time.

[27]

*Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 137 (2020) (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008)).

[28]

*Grass v. Reitz*, 749 F.3d 738, 741 (8th Cir. 2014).

[29]

*See* 8 C.F.R. § 236.1(g) ("At the time of issuance of the notice to appear, *or at any time thereafter and up to the time removal proceedings are completed*, an immigration official may issue a Form I-286, Notice of Custody Determination. (emphasis added)).

[30]

28 U.S.C. § 2243.

7

government to engage in the formalistic exercise of releasing and re-arresting Gonzalez Duran in order to lawfully detain him under Section 236(a).

## II.     Bond Hearing

"Detention during removal proceedings is a constitutionally valid aspect of the deportation process."[31]  But principles of due process place "'important constitutional limitations' on that power's exercise,"[32] and individuals subjected to prolonged detention under Section 236(a) sometimes must be "afforded process in addition to that provided by the ordinary bail hearing."[33]

In *Velasco Lopez*, the Second Circuit held that an immigrant who had been detained under Section 236(a) for 14 months was entitled to "a new bond hearing at which the Government was required to show by clear and convincing evidence that he was either a flight risk or a danger to the community."[34] In *Black v. Decker*,[35] the Second Circuit held that immigrants who had been detained for seven and 21 months under a neighboring provision of the INA were entitled to bond hearings within the same parameters.[36]

To determine whether detention under Section 236(a) has become unduly prolonged in any given case, thereby entitling a detainee to additional procedural protections, the Court considers the three *Matthews v. Eldridge* factors: (1) "the private interest that will be affected by the official action";

---

[31]     *Velasco Lopez*, 978 F.3d at 848.

[32]     *Id.* (quoting *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001)).

[33]     *Id.* at 854.

[34]     *Id.* at 846.

[35]     103 F.4th 133 (2d Cir. 2024).

[36]     *Id.* at 137-38 (addressing detention under 8 U.S.C. § 1226(c)).

(2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[37]

### A.   Private Interest at Stake

The private interest at stake is "the most significant liberty interest there is – the interest in being free from imprisonment."[38]  Gonzalez Duran has lived in this country since he was brought here as a young child.  The record shows also that he has significant family ties in this state that doubtless have been affected negatively by his prolonged incarceration.[39] This deprivation of liberty is, "on any calculus, substantial."[40]

Gonzalez Duran initially was illegally detained under Section 235(b)(2)(A) and remained incarcerated for more than four months before receiving *any* sort of process through which he was allowed to challenge his detention.   Furthermore, as in *Velasco Lopez*, Gonzalez Duran has been "incarcerated in the Orange County Correctional Facility . . . alongside criminally charged defendants and those serving criminal sentences," even though his detention "was not the result of a criminal adjudication."[41]  These hardships further underscore Gonzalez Duran's strong liberty interest.

---

[37]

*Velasco Lopez*, 978 F.3d at 851 (quoting *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)).

[38]

*Id.*

[39]

Habeas Petition ¶ 13 ("Since he was eight years old, Petitioner has lived with his mother, step-father, and two brothers in Staten Island, New York.  His biological father lives in Florida.").

[40]

*Velasco Lopez*, 978 F.3d at 851.

[41]

*Id.*

"Where the Supreme Court has upheld detention during the pendency of removal proceedings, it has been careful to emphasize the importance of the relatively short duration of detention."[42]  In *Demore v. Kim*,[43] the Court noted that pre-removal detention under Section 236(c) of the INA lasted roughly a month and a half in the vast majority of cases.[44]  Gonzalez Duran's incarceration already has lasted more than six times longer than that, as Gonzalez Duran now approaches his tenth month behind bars.  And "it is impossible to say how long [Gonzalez Duran's] incarceration [will] last[],"[45] since as far as the record shows the BIA has yet even to set a briefing schedule in the appeal of Gonzalez Duran's removal order.  The first *Matthews* factor heavily favors Gonzalez Duran.

### B.       *Risk of Erroneous Deprivation*

The procedures that applied to Gonzalez Duran's bond hearing created a significant risk of an erroneous deprivation of liberty.  Agency regulations place the burden on detainees like Gonzalez Duran to demonstrate that he is not a flight risk or a danger to the community.  But "proving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern,"[46] particularly where, as here, "ambiguities, or lack of information, in the record result in an adverse inference against the detainee."[47]  In determining whether someone poses a bail risk, the government "ha[s] substantial

---

[42]      *Id.* at 852.

[43]      538 U.S. 510 (2003).

[44]      *Id.* at 530.

[45]      *Velasco Lopez*, 978 F.3d at 852.

[46]      *Black*, 103 F.4th at 156 (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 31 (1st Cir. 2021)).

[47]      *Velasco Lopez*, 978 F.3d at 847.

10

resources to deploy,"[48] so requiring the government to prove the positive – i.e., that the detainee *is* a danger or a flight risk – is likely to reduce significantly the risk of an erroneous decision to detain.

In Gonzalez Duran's case, there is a substantial probability that the burden of proof played a role in the immigration judge's decision to deny bond. Although the government introduced evidence that Gonzalez Duran had had multiple encounters with law enforcement, his only conviction for a non-traffic offense stemmed from events that occurred now more than 13 years ago.[49] And the judge mentioned the burden allocation repeatedly, explaining that "[u]ltimately, it is the respondent's burden to prove that he is not a danger to the community of the United States" – and concluding that Gonzalez Duran's evidence was "simply insufficient to meet his burden."[50]

The government argues that the second factor does not favor Gonzalez Duran because his criminal history is worse than the criminal histories of the defendants in *Velasco Lopez* and *Black*. This Court need not itself decide whether Gonzalez Duran should be released on bond, as "the right to procedural due process . . . does not depend upon the merits of a claimant's substantive assertions."[51] Although the opinions in *Velasco Lopez* and *Black* emphasized evidence suggesting that the detainees posed no bail risk, nothing in them suggests that only detainees who readily can prove their case for release are entitled to additional procedural protections in the face of prolonged detention. Suffice it to say that, on the current record, whether shifting the burden to the government would have made a difference raises a question for this factor substantially to favor Gonzalez Duran.

---

[48] *Id.* at 853.

[49] Bond Order (Dkt 1-1) at 5-6.

[50] *Id.* at 6.

[51] *Carey v. Piphus*, 435 U.S. 247, 266 (1978).

C.      *Government's Interests*

The government asserts that it has well-established interests in protecting the community and ensuring an immigrant's appearance at removal proceedings. But as in *Velasco Lopez*, the government has not convinced the Court that "requiring it to justify [Gonzalez Duran's] detention by clear and convincing evidence [would] substantially undermine[] its legitimate interests or entail[] an undue administrative burden."[52] "When the Government incarcerates individuals it cannot show to be a poor bail risk for prolonged periods of time . . . it separates families and removes from the community breadwinners, caregivers, parents, siblings and employees."[53] The government has no legitimate interest in holding Gonzalez Duran if, having had more than nine months to build a case against him, it cannot demonstrate that his continued incarceration truly would be necessary. Furthermore, it is clear from the government's opposition papers that ICE already has in its possession many, if not all, of the records that would be pertinent to proving its case at a new bond hearing, suggesting that any administrative burden would be minimal.

\* \* \*

The foregoing factors demonstrate that Gonzalez Duran is constitutionally entitled to a new bond hearing at which the government bears the burden to prove by clear and convincing evidence that he poses a danger to the community or a risk of flight. Furthermore, as requested by Gonzalez Duran without specific opposition by the government, the immigration judge must consider as factors Gonzalez Duran's ability to pay and alternative means of assuring his appearance when setting any bond amount – provided, however, that a bond amount would be at issue only if the judge were to determine that the government has failed to prove that Gonzalez Duran poses a danger to the community.[54]

---

[52]     *Velasco Lopez*, 978 F.3d at 854-55.

[53]     *Id.* at 855.

[54]     *See Black*, 103 F.4th at 158-59.

III.    *Exhaustion*

A habeas petitioner normally must exhaust administrative remedies before seeking relief.[55] The government argues that the Court should decline to intervene while Gonzalez Duran's appeal from his bond hearing remains pending before the BIA. But the judge-made exhaustion requirement applicable here has several exceptions, including when administrative appeal would be futile and in some instances when a detainee has raised a substantial constitutional question.[56] As relevant here, "courts in this District routinely excuse noncitizens' failure to exhaust administrative remedies when noncitizens challenge the burden allocation at a [Section 235(a)] bond hearing."[57]

The BIA has no jurisdiction to consider Gonzalez Duran's constitutional claim, so any attempt to put that question before the agency would be futile.[58] Furthermore, the Court has determined that Gonzalez Duran is constitutionally entitled to be released *now* if the government cannot sufficiently prove the necessity of his detention, so the prospect that the BIA may release him on its own accord at some undetermined time in the future – perhaps months from now – is cold comfort at best. In these circumstances, and particularly in light of the fact that Gonzalez Duran previously was illegally detained for months under Section 235(b)(2)(A), the Court exercises its discretion to excuse Gonzalez Duran's failure to exhaust.[59]

---

[55]    *See, e.g.*, *J.C.G. v. Genalo*, No. 24-cv-8755 (JLR), 2025 WL 88831, at *4 (S.D.N.Y. Jan. 14, 2025).

[56]    *Id.*

[57]    *Id.* at *5 (collecting cases).

[58]    *See Matter of C-*, 20 I. & N. Dec. 529, 532 (B.I.A. 1992); *see also United States v. Gonzalez-Roque*, 301 F.3d 39, 47 (2d Cir. 2002).

[59]    *See Beharry v. Ashcroft*, 329 F.3d 51, 58 (2d Cir. 2003).

13

### *Conclusion*

For the foregoing reasons, the petition for a writ of habeas corpus (Dkt 1) is hereby **GRANTED** to the extent herein set forth.

Respondents are hereby **ORDERED** to take Petitioner before an immigration judge for an individualized bond hearing **within seven calendar days** of this Opinion and Order.  At that hearing, the government shall bear the burden of demonstrating, by clear and convincing evidence, that Petitioner is a danger to the community or a risk of flight.

It is further **ORDERED** that if the government fails sufficiently to demonstrate that Petitioner poses a danger to the community, the immigration judge shall, when setting any bond amount, consider as factors Petitioner's ability to pay and alternative means of assuring his appearance.

In the event the Respondents fail to provide Petitioner with such a bond hearing within seven calendar days, Respondents are hereby **ORDERED** to release Petitioner immediately in this district, together with any and all personal property seized from him upon his arrest.

It is further **ORDERED** that Respondents shall file an affidavit or declaration on the docket **within eight calendar days** demonstrating their compliance with this Opinion and Order.

SO ORDERED.

Dated: June 3, 2026

/s/     Lewis A. Kaplan

Lewis A. Kaplan
United States District Judge